IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE J. WILLIAMS,** ) | |
| ) | |
| **Plaintiff** ) | **Case No. 2:07-CV-0991-VEH** |
| ) | |
| v. ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Willie J. Williams ("Mr. Williams") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration, which denied his application for Supplemental Security Income ("SSI") benefits.[1] Mr. Williams timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## STANDARD OF REVIEW[2]

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d at 1239. This court will determine that the Administrative Law Judge's ("ALJ") opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

   (1)   whether the claimant is currently employed;
   (2)   whether the claimant has a severe impairment;
   (3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
   (4)   whether the claimant can perform her past work; and
   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FACTUAL BACKGROUND**

Mr. Williams was 41 years of age at the time of his hearing before the ALJ and at the time of the ALJ's decision. (Tr. 27). He claimed SSI benefits on September 30, 2003, alleging that he became unable to work on April 15, 2000. (Tr. 19, 52). Mr. Williams protectively filed for DIB on September 15, 2003, based on the April 15, 2000 onset date; nonetheless, the DIB claim was not brought before the ALJ. (Tr. 54). Mr. Williams also had a prior application for DIB, which was denied on July 1, 2003, after a hearing. (Tr. 54).

Mr. Williams attended school until the eleventh grade; however, he neither graduated nor received his GED. (Tr. 147). Mr. Williams worked in a variety of

unskilled to semi-skilled positions before the alleged onset date, including positions as a laborer, demolition man, sanitation worker, and machine operator. (Tr. 152-53). As stated on his disability report form, Mr. Williams based his disability and SSI claims upon fractured vertebrae and disc problems. (Tr. 57).

## **FINDINGS OF THE ALJ**

The ALJ determined that Mr. Williams had not engaged in substantial gainful activity since April 15, 2000, the alleged onset date of the disability. (Tr. 28). The ALJ found that Mr. Williams suffered the severe impairments of degenerative disc disease of the cervical and lumbar spine and aseptic necrosis of the right hip. (*Id.*). As a result, Mr. Williams met the first two prongs of the five prong test; however, the ALJ did not find that these impairments – taken separately or in combination – met or equaled the criteria of a listed impairment. (*Id.*).

The ALJ further held that Mr. Williams could not perform any past relevant work, but had the residual function capacity ("RFC") to perform sedentary work, with the limitations that he can never climb, operate hazardous machinery, or work around unprotected heights. (Tr. 29). Also, the ALJ determined that Mr. Williams required a temperature-controlled environment and a sit/stand option. (*Id.*). Based on the testimony of the vocational expert ("VE"), the ALJ found that there were an adequate number of jobs in the local economy that Mr. Williams could perform despite his

sedentary RFC. (Tr. 28). As a result, the ALJ concluded that Mr. Williams was not under a disability. (Tr. 29).

## **FINDINGS AND HOLDINGS OF THE COURT**

Mr. Williams seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed with an award of benefits or remanded for further consideration. (Pl. Br. 10).

### I.  The ALJ afforded the proper weight to medical opinion evidence.

First, Mr. Williams claims that by giving less weight to the medical source opinion completed by Dr. Harris – which was primarily based on the subjective complaints of Mr. Williams – the ALJ's opinion is not supported by substantial evidence. (Pl. Br. 8-9). However, because Dr. Harris's objective medical findings were different from his findings based upon Mr. Williams's subjective complaints, the ALJ gave more weight to the former and less weight to the latter. (Tr. 25-26). Primarily, the ALJ found the objective evaluation to be more in line with the medical evidence contained within the record, thus affording more weight to Dr. Harris's objective evaluation. (Tr. 25). The Regulations state that the ALJ can give weight to medical opinions based on a variety of factors, one of which is consistency with

the medical record.[4]  Therefore, the ALJ's decision to place significant weight upon Dr. Harris's objective findings, which were consistent with the medical record, was based upon substantial evidence.

> **II.    Dr. Harris's findings concerning Mr. Williams's hip, MRIs, and x-rays were consistent with the medical evidence.**

Second, Mr. Williams argues that because Dr. Harris did not consider his hip impairment, the ALJ's reliance on the doctor's report is misplaced.  (Pl. Br. 8).  However, Dr. Harris did a series of tests to determine Mr. Williams's range of motion, which included an examination of hip movement.  (Tr. 100).  Dr. Harris found that Mr. Williams had normal function in his hips at the time of the examination.  (Tr. 100).  Therefore, Mr. Williams's assertion that Dr. Harris "made no mention of any objective findings related to the hips" is not entirely accurate.  (Pl. Br. 8).

Also, Mr. Williams argues that Dr. Harris's x-ray results, which showed well-preserved lumbar and cervical disc spaces, were not in agreement with an MRI performed less than a year earlier. (Pl. Br. 8).  Dr. Harris mentioned the earlier MRI scan in his medical opinion statement, which demonstrated his awareness of those results when considering the x-rays.  (Tr. 98).  In addition, after a consultative examination – not mere reliance on the x-rays – Dr. Harris came to the conclusion

---

[4] "Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."  20 C.F.R. § 416.927(d)(4).

that Mr. Williams could perform light to sedentary work, with the ability to move around.  (Tr. 99).  Dr. Harris's opinion is consistent with the medical evidence contained in the record; therefore, the ALJ's reliance upon it is supported by substantial evidence.[5]  Moreover, the ALJ considered both the MRI and x-ray results in his findings: "While degenerative changes have been noted on MRI or x-ray, the remainder of the claimant's physical examination has been essentially normal." (Tr. 25).

### III.  The ALJ properly developed the record concerning Mr. Williams's doctors' appointments and previous DIB claim.

Finally, Mr. Williams argues that the ALJ failed to develop the record concerning a doctor's appointment that occurred after the hearing but before the opinion was issued.  (Pl. Br. 9).  Because of the non-adversarial nature of the proceedings, the ALJ has a "basic obligation to develop a full and fair record." *Graham v. Apfel,* 129 F. 3d 1420, 1422 (11th Cir. 1997).  However, the ALJ's duty to develop the record only applies to the "12 months preceding the month in which you file your application."  20 C.F.R. § 416.912(d)(2).  Therefore, the June doctor's appointment does not fall within this twelve month window as carved out by the

---

[5] The mere fact that the two sets of test results – which were performed using different types of machines – are inconsistent does not restrict the ALJ from making his determination.  "When there are inconsistencies in the evidence that cannot be resolved . . . we will make a determination or decision based on the evidence we have."  20 C.F.R. § 416.927(c)(4).

Regulations. Of course, the ALJ can look outside the twelve months if doing so would aid his disability determination; however, the ALJ in the current case based his decision on substantial evidence – which includes the medical evidence already present in the record. 20 C.F.R. § 416.912(d).

Furthermore, the ALJ both noted that Mr. Williams had the June appointment and included Dr. Kirkpatrick's medical diagnosis in the factual portion of his opinion. (Tr. 21-22). As a result, the ALJ properly developed the record in regard to Mr. Williams' doctors' appointments by referencing Dr. Kirkpatrick's report. The ALJ further noted that Mr. Williams's last visit to Dr. Kirkpatrick, or any physician, was in December 2004, which supports the ALJ's reasoning that Mr. Williams's testimony concerning pain was not entirely credible.[6]

With respect to Mr. Williams's DIB claim that was filed on September 15, 2003, the ALJ had no duty to develop the record concerning a claim that was not brought before it.[7] Indeed, in the trial transcript, Mr. Williams's counsel noted that "because of his date last insured problems, there was no reason for him to use anymore than the SSI claim." (Tr. 137). As a result, the ALJ was free to omit the

---

[6] "Therefore, there is simply no reason why the claimant would not seek treatment unless his symptoms were not as severe as alleged." (Tr. 26).

[7] "If you are dissatisfied with one of the decisions or determinations listed in § 404.930 you may request a hearing." 20 C.F.R. § 404.929. Therefore, the decision to appeal an initial adverse DIB determination rests solely with the claimant.

9

DIB claim in his consideration of Mr. Williams's SSI claim.

## CONCLUSION

The Court concludes that the ALJ's determination that Mr. Williams is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum opinion will be entered.

**DONE** and **ORDERED** this 27th day of March, 2008.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge